Good morning, Your Honors, and may it please the Court. I'm Elizabeth Newman, representing Mr. Chetty, the appellant. Your Honors, there are two issues in this appeal, one raised in our initial briefing and one raised in our supplemental brief after Blakely was decided by the Supreme Court. Unless the Court has questions about the Blakely supplemental issue, I would like to focus on the instructional issue. Your Honors, the government appears now to be conceding an issue that it contested below with respect to this issue, that is, whether Mr. White had actually received a benefit. And although it seems to be conceding that he did in its briefing, I would still like to touch on it. The Holmes case says that the witness benefit instruction is justified when a witness may have testified in order to leave open the possibility of a future benefit. That was a case involving a citizen informant in a bank robbery who was paid for the information she had provided to law enforcement but was not being paid for her testimony. The Court said that she may have hoped that she would be still paid and that the instruction was warranted, at least as an initial matter. In addition, the Della Rosa case, as far back as 1980, said that any personal advantage to the witness is a benefit. And Mr. White here did receive an enormous personal advantage. He did testify in order to leave open the possibility of a future benefit. According to his plea agreement, if he testified to the government's approval, that is to say, if the government believed that he had provided substantial assistance, the government would make a 5k motion in his sentencing, which it ultimately did, reducing his sentence from a statutory maximum of 60 years and a guideline maximum of 24 months to one day. Now, if the district court doesn't give a witness benefit instruction and the government witness did receive a benefit, then the Court has to reverse if the witness's testimony is important to the case, that is to say, if it supplies the only strong evidence of guilt. That's according to the Patterson case as far back as 1981. And Mr. White's testimony here did meet that standard, because the central issue in this case was how to characterize the transaction that occurred. Nobody disputed that Mr. Chetty sent Mr. White a check for $225,000 that wasn't backed by funds, and that Mr. White, the bank manager, then wire-transferred back $210,000 to Mr. Chetty. But nobody except Mr. White testified about what that really meant as far as the prosecution was concerned. In order to find Mr. Chetty guilty, the jury had to find that he had had fraudulent intent, and the jury was instructed that it could not find fraudulent intent if Mr. Chetty reasonably expected that the deposits would cover that $225,000 check by the time it was presented for payment. And Mr. White was the only person who testified about Mr. Chetty's belief. Mr. Chetty himself testified that he fully expected that the deposits would cover the check because he believed sincerely that Mr. White's representations that the check would be covered either by the funding of the mortgage repayment refinancing loan on his personal property, his house, or by the $100 million development loan. And it was only Mr. White who refuted that testimony for the prosecution by testifying that long before this transaction he had told Mr. Chetty that the development fund loan was not going to fund and that Mr. Chetty had never talked to him about a mortgage loan. So it was only Mr. White who provided the evidence of guilt that the jury needed to convict on count three. As you know, the jury acquitted on counts one and two. Well, let's move a little bit farther along. Let's assume for discussion White was an important witness. There was a cautionary instruction given to the jury about treating his evidence or his testimony with great care. Is there any authority to support the proposition that the instruction that was given was not sufficient to alert the jury to the concern? I believe, Your Honor, that there are several cases that provide authority for that proposition. For one thing, both the Bernard case and the Della Rosa case from 1980 and 1981 say that a district court must give the instruction if the witness's testimony is unreliable for other reasons. That's a significant enough statement to have made its way into the commentary on this witness benefit instruction in the Ninth Circuit's model jury instructions. What do you mean unreliable for other reasons? The example that's given in these cases and that's also found in the commentary, Your Honor, is that of, for example, an addict. There's a standard addict instruction. Do you think Mr. White was unreliable for reasons other than his benefit? Yes, Your Honor. I think that the very quantity of factors pointed out to the jury by the district court in its instructions show how unreliable he was. He was an accomplice, for one thing. He had sustained two felony convictions in connection with his conduct with Mr. Chetty and his conduct with Vanessa Richardson. He hadn't declared as income the money he had laundered through the William Adams account with Vanessa Richardson's assistance or connivance. He ---- Isn't that all bare in what kind of sentence he might get if he didn't go over it? Well, to you it might, perhaps, Your Honor, and certainly to me as a defense lawyer it would, but I'm not sure that it would to a jury. And if Mr. White's testimony was unreliable for all of these other reasons, then according to me ---- Well, it seems to me that's the question, at least, whether there are other reasons or whether it's all the same reason. We know he's getting a ---- likely to get a benefit, and somebody in his shoes is going to have some incentive to provide testimony that the government wants. But I don't know. He's not a drug addict. Does he have any other characteristic that would have made him unreliable? According to the case law, Your Honor, well, in both the Bernard case and the Della case, the witness whose testimony was objected to the ---- as to whose testimony the instruction was not given was, I think, in both cases they were addicts, at least arguably, but also in both cases they were accomplices. And in both cases, the circuit said that on remand, if retrial occurred, the district court should fold into one instruction all three of those things, that he was an ---- that he had received a benefit, or in the language of the case in both cases he was an addict. But that may be the ideal way to do it, but how do you reconcile that argument with the Morgan case, which says you don't have to cover every possible base, or at least it's not reversible error if you don't? I think the Morgan case can be distinguished, Your Honor, on a couple of grounds. For one thing, it involved witnesses who were accomplices but who were not informants. And so the informant instruction was not justified. And so to the extent that Morgan says you don't have to give them both, and I don't dispute that it does, that's dictum. Not only that, Your Honor, that's a case from 1977 which precedes both Patterson, Bosch, Patterson in 81, De La Rosa in 1980, Bosch in 1990, and Holmes in 2000, I believe. And all of those cases, I believe, Your Honor, certainly De La Rosa and Bernard say very clearly that the instruction is more required than ever if the witness's testimony is unreliable for some extent. Well, all right, but I'm just trying to understand what you think the rule is going forward, that if a witness is unreliable for six different reasons and the jury is told five of them. Yes. Is it reversible error if they're not told the sixth one? I believe that it is, Your Honor, because when you look at those statements in Bernard and De La Rosa, you think, why is it more important to tell the jury of the sixth reason if they've already been told that he's unreliable for these five reasons, and yet that's what those cases do say. And so when you think about it, one way to think about it that I would suggest to the Court is that the jury has been given five different reasons to question Mr. White's testimony. The jury has not been told a blanket, watch out for this man's testimony and regard it with caution. It's told why. And so when it goes back into the jury room and deliberates, it considers, is his testimony unreliable for this reason? Is it unreliable for that reason? But it doesn't consider, is it unreliable for this sixth reason? They knew that he had entered into a plea agreement. Yes. And wouldn't it be common sense, I guess we can't speculate as to what the jury was thinking, but why are they being told by the district judge he entered into a plea agreement, you should consider that and view his testimony with great caution. Why would they care about that other than that the plea agreement would provide a benefit? Isn't there at least an implicit notice of that? I don't think it was direct enough, Your Honor. I think that if you are a lawyer and parse it out, then that's certainly an inference that you could draw as a lawyer-juror. But as a layperson-juror, it's not so clear. And pointing directly to all of these other reasons impliedly suggests that this sixth reason is not something that the jury should consider in being cautious as to Mr. White's testimony. And you can see, you can imagine that someone in a jury room might say, might not even express or rely on a feeling of skepticism as to his testimony for this sixth reason. So I would certainly suggest that it was an abuse of discretion and that it was an abuse of discretion because the facts justified the instruction. In other cases, the Court has found no abuse of discretion, but arguably because the facts didn't justify the instruction being given at all. That is to say, in one case, I think it was the Hoyos case, the district court found and the reviewing court agreed that the witness was actually a DEA agent and not an informant. In another case, I think it was Holmes, the district court found and the reviewing court agreed that the witness, though possibly a jailhouse informant, it wasn't clear – oh, I'm sorry, that was Monzon – it wasn't clear enough on a plain-error review to say that this witness really was an informant testifying for a benefit rather than someone testifying out of a spasm of law enforcement good citizenship. And so I would – Your time has expired. Because our questions exhausted your time, we'll let you have a minute for rebuttal, but only a minute. Thank you, Your Honor. Good morning. May it please the Court. Jason Gonzalez for the United States. Your Honor, the district court gave five other instructions that, taken together, more than adequately cautioned the jury about the informant's testimony. As the Court has alluded, the district court instructed the jury that Mr. White, the informant, had entered into a plea agreement with the government and directed the jury that it could consider that plea agreement for when determining Mr. White's credibility and how much weight to give his testimony. And that plea agreement was the subject of extensive cross-examination at trial. The district court also gave the accomplice witness instruction, which the Court in Morgan said is an adequate substitute for the informant instruction. And it said that because both of those instructions tell the jury that it's to view the informant's testimony with great caution, giving the testimony the weight you think it deserves. Both the Bernard and the de la Rosa cases, which the defense placed a lot of emphasis on in the argument, both of those cases say the same thing. They cite Morgan for that same proposition.  The district court, had it given the informant instruction, need not have given a separate accomplice instruction. So it's basically saying, citing Morgan, that those two instructions provide the same type of warnings. The point of the two instructions is the same. So if you give one, you don't need to give the other. And that's the same with Bernard. Bernard cited Morgan and said there is no difference in substance between the informant and the accomplice instructions. If you give one, you don't need to give the other. So the Morgan case, contrary to what was implied, I think, continues to be the law. De la Rosa and Bernard cited and rely on it as good law. But it wasn't only the accomplice witness instruction that was given. As I noted, it was the plea agreement instruction. And then another instruction that Mr. White had been convicted of a related crime arising from the same series of events. That instruction also tells the jury to view Mr. White's testimony with caution, giving it the way that you think it deserves. The same language that the Morgan court, de la Rosa court and Bernard court said was the operative or the substantive point of the informant and the accomplice instruction. So we have two different instructions providing the operative warning that the informant instruction that was not given gives. And we also have the district court warning the jury that Mr. White has been convicted of felonies and had other prior bad acts and that the jury could consider other elements. The general credibility instruction, that was also given. So even assuming that Mr. White was an informant, which we're happy to do, I think that that is a fair characterization. He had the expectation of benefits, and that's likely enough. Even if you concede that, the district court gave five other instructions, which, in an exercise of its discretion, was more than adequate to warn the jury about Mr. White's testimony. The second element to our argument about the informant instruction is that not only were they not entitled to it because they received five other instructions, but they were not entitled to it because Mr. White, the informant, was not the only evidence or the strong evidence of guilt. The defendant confessed on two separate occasions to two separate FBI agents that he had committed illegal conduct in connection with this transaction, the wire transfer. And that's in the record. In March 2001, the defendant admitted that he wrote a bad check, sent it to Mr. White, and that he knew it was illegal to write a bad check. In April of 2001, he admitted the same thing to a different FBI agent, and then he admitted that he knew what he and Mr. White had done was illegal. That makes this case quite similar to the Holmes case, which is a bank robbery case in which the defendant was convicted in part on the basis of informant testimony. But the district court said there was no abuse of discretion in it. I'm sorry. The appellate court said there was no abuse of discretion in declining to give the requested informant instruction because there was other strong evidence of guilt. Not only was there the informant testimony, but there was testimony from bank tellers and bank employees saying this is the bank robber. And there were surveillance photos showing the bank robber robbing the bank. So in light of the Holmes case, the defendant's not entitled to the instruction here, even apart from the five other warrants that the jury received. Let me ask about that in the context of what we know now, which I understand is not what was known then, but the jury's verdict, where he was in fact not convicted on all counts. He was acquitted on the other counts. Does that leave any sense that perhaps the testimony of Mr. White in the context of what he was convicted of was in fact important, that White was a critical witness for that? The jury verdict is a bit of a mystery because the lot that the both all three counts were about the same transactions. And the testimony of Mr. White about the first, about that related to count one and count two related directly to count three as well. So it wasn't that he was testifying about different facts regarding counts one and counts two and different facts regarding count three. It was all one transaction that was at issue. And Mr. White's testimony was part of the evidence related to that, in addition to the documents and the bank employees that we had testify and the FBI agents who had taken the defendant's admissions. So Mr. White's testimony, I think, has some force, undoubtedly, but it was not the sole strong evidence of guilt. We had FBI agents talking about how he admitted guilt, and we had bank employees describing what appeared to be and what in fact was an illegal transaction, Mr. White sending a bad check over to California, artificially inflating his bank account, and then withdrawing the funds back out through a wire transfer, funds that he, that were imaginary, that he was not entitled to. So the jury had all of this in front of it, in addition to Mr. White's testimony. So I think under the Holmes case, and, again, this is apart from the five other instructions that I think can resolve this issue, but even under the Holmes case, they're not even entitled to the instruction in the first place because he's not the only strong evidence of guilt. There's the admissions to the two FBI agents and there are the bank records and the testimony of the bank witnesses. There is also a Blakeley issue that I would like to address if the Court is interested in it. Let me take up a housekeeping matter on the Blakeley issue, because as you can imagine, in all the criminal cases where sentences are at all an issue, we've received requests to consider the impact of Blakeley. This panel is highly unlikely to decide any of those questions because other panels have priority. I know in this case there was a request by the government for leave to respond to the supplemental brief of defendant. Have we – and we've received your supplemental brief, but have we ever acted on your motion and technically filed it? Yes. I believe very recently that the motion was – or the supplemental brief was filed. It does preserve our Blakeley arguments, which I won't spend any time on, but there is one Blakeley argument that I think is slightly different, and that is that even accepting that, of course, Ameline and Blakeley is applying to the sentencing There was no reversible error in the district court's sentencing decision because the sentencing enhancement at issue, the amount of loss for $210,000, was admitted by the defendant at trial. And during closing arguments, they conceded it. And during sentencing, they conceded it. And in their opening brief on appeal, they basically conceded that there was no issue about what actually happened, including the spending – the receipt of the $210,000 and the wire transfer and the spending of the money. What was only at issue at trial was the defendant's state of mind, as was just said in court this morning. So there's really nothing to remand and determine on sentencing. Even assuming that as error that the court did not instruct the jury to find specifically what the amount of loss was, which is now essentially the rule, and even though the government didn't allege the amount of loss in its indictment, which is now the rule, the defendant admitted the amount of loss at issue. So there's nothing left for the district court to decide. Everything has been decided beyond a reasonable doubt. And there is, of course, case law to support this procedure. And that's the Smith case, which I cited in the supplemental brief, and also the Johnson and Cotton cases. All of those cases are cases in which they were decided under apprendi, but the same principles apply. And they are that in all of those cases, I believe, the district court found rather than the jury found a fact leading to sentencing or conviction. They contested under apprendi that procedure. The court said, yes, there's plain error under apprendi. There's error, it's plain, but that there was no substantial right of the defendant affected and there was no substantial harm to the fairness of the judicial proceedings because in all those three cases, the facts were just not disputed. The facts leading to the sentencing enhancements were not disputed at all. So there was plain error, but it didn't require reversal. So I think even if you apply Blakely in this case, it doesn't require a reversal. The sentence can stand. There is at least one element that was contested, I guess, at the stage of sentencing. The enhancement or the argument that the loss amount should be reduced by the amount of money that was returned to the bank. And as I understand it, that would affect a, potentially affect a one-level enhancement change. Now, as far as I understand it, the ultimate sentence that was imposed would still fit within the range even if you reduce the enhancement by a level. But is that something that should be left to the district court in any event? The – we say no because that argument, whether we should deduct $12,000 from the loss amount, is a legal argument. He admitted, yes, okay, I took $210,000, but district court, I'm asking you as a matter of law to discount from my loss the fact that I paid back $12,000. Everybody agreed that that happened. Everybody agreed he got the $210,000. Everybody agreed he paid $12,000 of it back after he got caught. But it was just a legal argument as to whether or not it was appropriate to do that. So the facts are the facts, and the facts are established. There's no question about that. I see I'm almost out of time unless there's any questions I can submit. Thank you very much. I'll be very brief, Your Honor, and try to talk very fast and make two very quick points. First, as to the evidence of guilt in Mr. Chetty's admissions, he said certain things to the agents, it's true, but I think it's a general perception among the lay public, which may be correct, that when you write a check without the funds to back it, you've done something that's illegal. The question in this case, though, was whether he had aided and abetted the misapplication of bank funds, which required a specific state of mind and was a state of mind that was fraudulent intent, and that the district court instructed the jury fraudulent intent is negative if the defendant reasonably believes that funds will exist in the bank account at the time that the check is presented for payment. So I would suggest and argue that there's a distinction between what a non-lawyer, uncounseled person says to an FBI agent about what he thinks he did, what he feels about, you know, his conduct in writing a check that wasn't backed, and the actual legal definition that a jury had to find facts to support in order to convict him. Number two. Thank you. Thank you. The case just argued is submitted. We will move to the next case on the calendar, which is U.S. v. Bustle.
judges: Noonan, Clifton Fogel